MONTGOMERY *v.* STATE.

[65 South. 572.]

1. CRIMINAL LAW. *Indictment and information. Sufficiency. Prison. Trustees. Violation of duty. Judicial notice. Delegation of authority. Ministerial duty.*

In an indictment or information the state must charge one offense and not many, and the defendant is only called upon to meet one charge, when the indictment contains but one count, and this charge must be definite and unambiguous.

2. PRISON. *Trustees. Violation of duty. Indictment. Sufficiency.*

Where an indictment charged accused with the violation of his duty as a member of the board of trustees of a penitentiary, first setting forth that it was the duty of the board of trustees to sell crops, receive the proceeds of such sale and pay them into the state treasury and further alleged that accused, though well knowing his duty, failed and refused to collect the proceeds of cotton seed sold to named persons, and to pay them into the treasury, and that the trustees, in nowise regarding their duty, did wilfully fail and refuse to sell such cotton seed, and that the board of trustees failed to receive the money for the sale of the cotton seed not sold. In such case the indictment was insufficient under Constitution 1890, section 26, which accords

to every person, charged with crime, the right to demand the nature and cause of the accusation, since it was uncertain whether the cotton seed had been sold and accused failed to collect the proceeds, or whether, after collection accused failed to pay the same into the treasury of the state, or whether the board of trustees refused to sell and collect the proceeds and pay them into the treasury.

3. Criminal Law. *Judicial notice. Code 1906, section 3589.*
 Courts cannot take judicial notice that any other farm than the Parchmen farm, named by Code 1906, section 3589, as a part of the state penitentiary, is a part of such institution.

4. Trustees. *Delegation of authority. Ministerial duty.*
 The board of trustees of the state penitentiary cannot delegate to another the duty of selling the penitentiary products since that involves the exercise of discretion, but they may delegate to another the ministeral duty of indorsing checks and depositing them with the state treasury, and hence a member of the board of trustees is not guilty of official misconduct because the secretary of the board embezzled funds which he was authorized to deposit or without authority, sold products of the penitentiary and converted the proceeds.

Appeal from the circuit court of Hinds county.
Hon. W. A. Henry, Judge.

W. A. Montgomery was convicted of misconduct in the discharge of his duty as a penitentiary trustee, and appeals.

The facts are fully stated in the opinion of the court.

*R. N. Miller, E. F. Noel,* and *W. J. Croon,* for appellant.

*Geo. H. Ethridge* and *Powell & Thompson,* for appellee.

Cook, J., delivered the opinion of the court.

Appellant is a member of the board of trustees of the penitentiary, and as such was indicted and convicted of misconduct in the discharge of his official duties. The trial court fined appellant one hundred dollars and re-

moved him from office. From this judgment appellant prosecutes this appeal.

Omitting the formal part, the indictment is in these words, viz.:

"Whereupon it became and was their duty, as such trustees of the board of trustees of the state penitentiary during the years 1911, 1912, and 1913, to sell all crops and to receive all moneys from the sale of manufactured goods, crops, and other properties belonging to the penitentiary of the state of Mississippi and to immediately pay the same into the state treasury, and especially to sell certain cotton seed raised on the Sunflower State Farm and to collect and receive from the Natchez Cotton Oil Company of Natchez, Mississippi, to whom said cotton seed had been sold, the sum of five thousand four hundred and ninety-six dollars and thirty-nine cents from the sale of cotton seed in cars Nos. S. P. 81546, I. C. 140776, Southern 107826, I. C. 13755, Southern 138130, New York Central 10611, C. of Ga. 4436, and from the Jackson Oil & Refining Company of Jaskson, Mississippi, the sum of three thousand one hundred and eighty-four dollars and forty-four cents from the sale of cotton seed in cars Nos. G. R. I. 3529, I. & G. N. 5354, M. L. 8284, and A. C. L. 30981; nevertheless the said C. C. Smith, Leroy Taylor, and W. A. Montgomery, at the time and place aforesaid, well knowing their duty in this behalf, but in nowise regarding it, did wantonly, willfully, knowingly, and unlawfully fail, neglect, and refuse during the two years prior to the date of this indictment to sell the cotton seed in the said cars Nos. S. P. 81546, I. C. 140776, Southern 107826, I. C. 13755, Southern 138130, N. Y. C. 10611, C. of Ga. 4436, G. R. & I. 3529, J. & G. N. 5354, M. L. 8284, and A. C. L. 30981, and receive the sum of eight thousand six hundred and eighty dollars and eighty-three cents from the sale of the same, and immediately pay the same into the state treasury of the state of Mississippi, as aforesaid, as they

were in duty bound to do, and thence continually, until the finding of this indictment, have so as aforesaid failed, neglected, and refused to receive the proceeds of said cotton seed and immediately pay the same into the state treasury of the state of Mississippi.''

To this indictment appellant demurred, assigning the following grounds:

"(1) The indictment charges no offense known to the law of the state of Mississippi, and no offense at common law.

"(2) The indictment charges or attempts to charge several offenses distinct and independent in the same count in the same indictment and is duplicitous and void.

"(3) The indictment does not inform the accused of the nature and cause of the accusation against him.

"(3½) Because of the fact that the date and authority by which the cotton seed was sold to the oil company is not set out; it does not appear from the indictment the cotton seed belonged to the state.

"(4) The indictment charges in one sentence that defendant refused to sell the cotton seed, and then charges him with a failure to receive the money for it, and then charges him with failing to pay the money into the treasury which is contradictory in terms and is vague, uncertain, and indefinite, and the defendant ought not to be held to answer the same.

"(5) Because the legal duty attempted to be charged is not set out; it does not appear from the indictment that the claim for the cotton seed was not barred by limitation and could be collected.

"(6) Because the duty to sell and receive the money is a discretionary duty, not indictable unless corruptly done.

"(7) Because the indictment does not charge corrupt failure of duty.''

This demurrer was overruled by the court.

The first averment of the indictment sets out the duties of the board of trustees of the penitentiary with refer-

ence to the sale of crops, receipt of proceeds of such sales, and the payment of same into the state treasury. The charging clause of the indictment says that it was the duty of the board of trustees of the penitentiary to sell all crops and to receive all money from the sale of crops and to immediately pay the same into the state treasury; then follows the specific charge that it was the duty of the board of trustees "to sell certain cotton seed raised on the Sunflower State Farm and to collect and receive from the Natchez Cotton Oil Company and from the Jackson Oil & Refining Company of Jackson, Mississippi, to whom said cotton seed had been sold," the sums of money mentioned in the indictment. The indictment then proceeds to charge that the trustees, "well knowing their duty in this behalf, but in nowise regarding it, did wantonly, willfully, knowingly, and unlawfully fail, neglect, and refuse, during the two years prior to the date of this indictment, to sell the cotton seed in the said cars." Again, following a description of the cars, the indictment charges that the board of trustees failed to receive the money for the sale of the cotton seed not sold. It will be observed from this that the indictment charges that certain described property had been sold, followed by a charge that the board of trustees had wantonly failed and refused to sell the same. Immediately succeeding the charge that the property had not been sold, the indictment charges the board of trustees with neglecting and rufusing to receive the purchase money for the cotton seed not sold.

Section 26 of the state Constitution accords to every person charged with crime the right "to demand the nature and cause of the accusation."

It is decidedly uncertain whether the averments of the indictment charge that the cotton seed mentioned was actually sold by the trustees, and that the trustees failed and refused to collect the purchase price and pay the same into the state treasury, or that the board of trus-

tees refused to sell the cotton seed at all, and, neglecting their duty in this respect, they had thereby neglected to collect the proceeds of the sale and pay same into the treasury.

If we take the first charge, it would appear that the cotton seed was sold and the trustee neglected and refused to collect and cover the purchase money into the treasury.

If we take the second charge, it would appear that the cotton seed had never been sold, and the state meant to charge its officers with wantonly failing to perform their duty to sell. Ordinarily the sale of a thing embraces several elements—an agreement on the price, the delivery of the article sold, and the collection of the agreed price. So it may be said that the last averment of the indictment charges a willful and wanton failure and refusal to sell the cotton seed by reciting that the trustees failed to do any and all of those things necessary to complete a sale.

But the first averment, read in connection with the last averment, destroys this idea by saying that the cotton seed had been sold, at a price agreed on, but the money had not been collected. The first averment may mean that the board of trustees and the Oil Mills had agreed on a price for the cotton seed, and the cotton seed had been delivered to the purchasers, but the trustees had neglected to collect the money and pay same into the treasury, while the last averment flatly contradicts this averment by saying that the cotton seed was not sold at all, and besides, the value of same had not been collected by the trustees and, furthermore, had not been paid into the treasury by the trustees.

It will be noted that the indictment is in one count, and the first averment is in direct conflict with the second averment, and the person accused, by the overruling of his demurrer, has been denied his constitutional right "to demand the nature and cause of the accusation."

To the charge that they had refused and neglected to sell the cotton seed, it is conceivable that the trustees might say they made every effort to sell and could not find a purchaser. To the charge that they had sold the cotton seed but had not collected the purchase money, the trustees might be able to say and prove that they had agreed upon the price, loaded the seed into the cars, but the purchasers refused to pay for same, and for this reason the money has not been turned into the treasury, and they still had the cotton seed but had been unable to find a buyer.

It appears to be clear that the separate, distinct, and contradictory averments in the indictment left it uncertain what the state expected to prove, and for this reason it was impossible for the defendant to prepare his defense, if any he had, to the charge attempted to be preferred against him.

The state must charge one offense and not many. The defendant is only called on to meet one charge when the indictment contains but one count, and this charge must be definite and unambiguous.

Before leaving this branch of the case it will be noted that the indictment charges that it was especially the duty of the board of trustees "to sell certain cotton seed raised on the Sunflower State Farm." It is not alleged that the "Sunflower State Farm" is a part of the penitentiary. We cannot take judicial notice that a farm of this name is a part of the penitentiary and under the supervision of the board of trustees, but this must be averred and proven.

Section 3589 of the Code 1906 names one farm as part of the penitentiary, viz., "Parchman," and, had the indictment averred that the cotton seed was raised on that farm, it would have been sufficient without further averment.

Coming now to the evidence in support of the charges in the indictment, it is only necessary to say that the

secretary of the board of trustees, testifying for the state, said that appellant authorized him to make sales of cotton seed, and that he sold the cotton seed in question, collected the money, and converted a part of same to his own use.

Appellant testified that he never authorized the secretary to sell cotton seed, and thus arises a sharp conflict in the evidence upon that point.

At the instance of the state the trial court instructed the jury as follows:

"The court instructs the jury for the state that it is the duty of the trustees of the state penitentiary to sell the cotton seed raised on the state farms themselves, and to receive the money for the same themselves, and to pay the same immediately into the state treasury themselves, and they cannot delegate these duties to any other person without violating the law, and if the jury believe from the evidence in this case beyond all reasonable doubt that Col. W. A. Montgomery, acting with the other members of the board of trustees, did authorize Lawrence Yerger, the clerk of said board, either to sell the seed in question for them or to receive the proceeds of such sale for them or to pay the same into the state treasury for them and did not themselves sell the seed and did not themselves receive the money for the same and did not themselves immediately pay the same into the state treasury, then it is the sworn duty of the jury to return the following verdict: 'We, the jury, find the defendant, W. A. Montgomery, guilty as charged in the indictment.'"

This instruction required the jury to convict appellant, although they might believe from the evidence that appellant did not authorize Yerger to sell the seed. The jury were authorized to find that appellant did not authorize Yerger to sell the seed, because appellant testified that he did not do so. If Yerger sold the seed without authority, appellant is not responsible for his embez-

zlement of any portion of the proceeds of the sale. According to appellant's evidence, Yerger sold the seed without his knowledge or consent, and appellant did not know that Yerger had collected the money, and there is no claim or pretense that appellant knew that Yerger had sold the seed in question, or that he had converted the money to his own use.

The whole theory of the state is based on Yerger's evidence and an order entered upon the minutes of the board of trustees authorizing the secretary to indorse checks and deposit same in the depositories. The duty imposed on the board to sell the products of the penitentiary required the exercise of discretion or *quasi-* judicial functions and could not be delegated to others, but we think the ministerial or mechanical act of indorsing checks and depositing same could be delegated to the secretary. 23 Am. & Eng. Ency. of Law, 376; 29 Cyc. 1395.

Under the facts of this case, the very foundation of the state's case rested and depended upon whether Montgomery authorized Yerger to make this sale. If Montgomery did not authorize the sale, Yerger received the money unlawfully and without any fault of Montgomery, and Montgomery cannot be criminally liable for Yerger's independent embezzlement of funds which came into his hands without the knowledge or fault of Montgomery.

It may be that the authority to indorse checks afforded the opportunity and means whereby Yerger was enabled to embezzle the money, but it must be borne in mind that, if he sold the cotton without authority from Montgomery, Montgomery, could not be held criminally responsible for Yerger's stealing the cotton, nor can he be held liable for Yerger's embezzling the money which he secured by an unlawful and unauthorized sale of the cotton. The instruction ignored this feature of the case, when it required the jury to convict Montgomery if

107 Miss.]                    Opinion of the court.

Montgomery himself did put the money in the treasury, although they might believe that Montgomery never in fact authorized Yerger, the secretary, to sell the seed in question, and that he (Montgomery) did not know Yerger had sold the seed and collected the purchase price. There is a clear distinction between criminality and negligence, and, though it be conceded that Montgomery was grossly negligent in not keeping himself posted upon the doings of the secretary, it by no means follows that he can be convicted for failing to immediately pay the money into the treasury because he did not know that Yerger had sold the seed and converted the money. He is liable in a civil suit for the conversion of the money by his agent, but he cannot be convicted for failing to pay into the treasury the money stolen by the agent, because this was manifestly beyond his power to do.

It seems to be the theory of the state that the trustees here committed a crime when it is proven that some one other than themselves manually delivered funds to the treasurer of the state; that they must deliver the money themselves to the treasurer, and, failing to do so, they subject themselves to prosecution. We are unable to indorse this theory because this would secrifice the spirit to the letter of the law.

Ministerial or mechanical powers or duties may be delegated, and, this being true, it logically follows that no crime is committed when such powers or duties are delegated, although the delegated person departs from his duty and commits an independent crime.

The demurrer to the indictment is sustained, the judgment of the circuit court is reversed, and defendant discharged.

*Reversed.*